CLARK MATHEWS
Assistant Federal Defender
Federal Defenders of Montana
Great Falls Office
104 2nd Street South, Suite 301
Great Falls, MT 59401
clark_mathews@fd.org
Phone: (406) 727-5328
Fax: (406) 727-4329
    Attorney for Defendant

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MONTANA
# GREAT FALLS MONTANA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>KRISTIN LOUISE MITCHELL,<br><br>Defendant. | Case No. CR 25-34-GF-BMM<br><br>**DEFENDANT'S<br>TRIAL BRIEF** |

COMES NOW Kristin Louise Mitchell, by and through her Counsel, Clark Mathews, Assistant Federal Defender, and the Federal Defenders of Montana, hereby submits the following trial brief.

## WITNESSES

The defense does not anticipate calling any witnesses.

1

## LEGAL ISSUES

### I.     404(b) evidence

On June 30, 2025, the Government filed notice of its intent to introduce 404(b) evidence. The Government states its intention to introduce Mitchell's 2003 alien smuggling conviction and her 2005 conviction for bringing in aliens for financial gain and a 2024 encounter with Border Patrol. None of these three incidents are admissible under 404(b) and Ms. Mitchell objects to their admission. This is propensity evidence thinly disguised as permissible 404(b) evidence.

Prior crimes are not admissible to show propensity or bad character, but they may be admissible to show "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed.R.Evid. 404(b). We employ a four-part test to determine the admissibility of Rule 404(b) evidence:

> Such evidence may be admitted if: (1) the evidence tends to prove a material point; (2) the other act is not too remote in time; (3) the evidence is sufficient to support a finding that defendant committed the other act; and (4) (in certain cases) the act is similar to the offense charged.

*United States v. Ramos-Atondo*, 732 F.3d 1113, 1123 (9th Cir. 2013).

To show relevance under the first prong, "the government must articulate precisely the evidential hypothesis by which a fact of consequence may be inferred from the other acts evidence." *Id. quoting, United States v. Mayans,* 17 F.3d 1174, 1181 (9th Cir.1994). Where the defendant's knowledge is contested, we have

2

"emphasized that the government must prove a logical connection between the knowledge gained as a result of the commission of the prior act and the knowledge at issue in the charged act". *Id.*

The remoteness in time is dependent upon the theory of admissibility and the similarity of the acts. *U.S. v. Johnson,* 132 F.3d 1279, 1283 (9th Cir. 1997). In other words, the more remote the acts, the more similar they need to be.

### A. Mitchell's 2003 alien smuggling conviction

The government asserts it has provided all this information to Ms. Mitchell in the discovery process. The government has provided a copy of the criminal complaint and affidavit of probable cause in support. Ms. Mitchell has not received any investigative reports. The government did not identify in its notice which witnesses it intends to introduce this proposed evidence.

What can be gleaned from the affidavit in support is that 22 years ago, Ms. Mitchell drove a vehicle from Mexico to the port entry in California. She reportedly asserted to Inspector Haro (not on the Government's list of witnesses) she had no one else in the vehicle. During an inspection, an alien was located hiding in the dashboard. The alien was interviewed by unidentified law enforcement officials and reported she paid smugglers to get her across the border so she could reside with her brother in San Diego. She was reportedly unable to implicate Ms. Mitchell.

In the present case, Ms. Mitchell is accused of attempted harboring 3 aliens. She is not accused of smuggling anyone across the border. No discovery has been provided to indicate Ms. Mitchell was motivated by financial gain. In fact, one of the aliens was previously deposed, he testified under oath Ms. Mitchell gave him a place to stay for a few days after an employer skipped town without paying him and he had nowhere else to go. He stated she helped him out of her own good will.

Ms. Mitchell was pulled over driving a vehicle in Shelby in the middle of the day with two of the alleged aliens as passengers, seated in factory installed passenger seats. They had just left Albertson's. The passengers identified themselves. Ms. Mitchell reportedly told law enforcement she believed they were political asylees. The government has asserted without factual support she knew that statement to be false.

The government's precise articulated hypothesis is "These factual similarities show that Mitchell was aware she could attempt to conceal an alien in her car in an effort to avoid law enforcement detection." (Doc. 92, p.7). That these two incidents are not particularly similar is plainly apparent. Combined with the significant remoteness, the Court should preclude its admission.

B. *Mitchell's 2005 alien smuggling conviction*

Similar to the 2003 conviction, Ms. Mitchell has only been provided a copy of the criminal complaint and affidavit of probable cause in support. Ms. Mitchell

has not received any investigative reports. The government did not identify in its notice which witnesses it intends to introduce this proposed evidence.

The affidavit in support reveals that in December of 2004, more than 20 years ago, Ms. Mitchell drove a vehicle from Mexico to the port entry in California. She reported to an unnamed customs officer she had no one else in the vehicle. An inspection of the trunk revealed 4 citizens of Mexico inside.

The government asserts the same hypothesis regarding its theory of admissibility. The same problems plague the government, that is, incidents not particularly similar and extreme remoteness in time.

### C. 2024 Border Patrol Encounter

The government has provided reports regarding an uncharged encounter Border Patrol had with Ms. Mitchell in March of 2024. Ms. Mitchell briefly crossed the border in a vehicle into Canada and returned back to the United States. Upon returning back to the United States, 3 males exited her vehicle and crossed into Canada. Importantly, there is no indication the 3 males lacked legal status or were undocumented aliens. According to the reports, the male subjects were not encountered again. Ms. Mitchell, now in the vehicle by herself, was stopped by Border Patrol.

Ms. Mitchell explained she worked for the OYO Hotel in Shelby. She gave guests rides at the request of the manager. Ms. Mitchell advised the 3 males were

believed to be Columbian because she had seen their passports when they checked in to the hotel. It is unclear what, if any, further investigation Border Patrol conducted regarding this incident.

The government's precise articulation regarding the admissibility of this evidence is unclear. The government alleges in 2024, Ms. Mitchell knowingly transported aliens with her vehicle to an area that is not a designated port of entry. The government argues without further explanation this shows a similar knowledge of alien status to the present case. However, in the discovery provided from the 2024 incident, it only shows Ms. Mitchell knew the 3 men were not citizens of the United States, not that they were present in the United States illegally. The government has not provided any proof the 3 unknown male subjects were "undocumented aliens."

Further, the government also argues the 2024 incident tends to prove her intention to violate the laws of the United States. The difficulty with this theory is that the 2024 incident does not indicate Ms. Mitchell violated the laws of the United States. The government does not identify what potential law of the United States was violated by transporting individuals into Canada. The 2024 border patrol incident is not sufficiently material and similar to the charged offense.

Finally, additionally, the minimal probative value of each of the 3 incidents are substantially outweighed by the danger of unfair prejudice and confusion of issues. Fed.R.Evid. 403.

## II.    *Statement of Defendant*

It is anticipated the government will introduce statements Ms. Mitchell made to law enforcement and others. These statements are not hearsay and are admissible as admissions of a party opponent under Fed. R. Evid. 801(d)(2)(A).

The government argues the defense may not attempt to elicit portions of communications, even if he believes such statements are "exculpatory in nature" because they are inadmissible hearsay and are not required under the rule of completeness. The government, in making this argument in other cases, relies on *United States v. Ortega*, 203 F.3d 675 (9th Cir. 2000). The Government notes that in rejecting the defendant's argument in that case that non-self-inculpatory statements made contemporaneously with other self-inculpatory statements, the *Ortega* Court held that under the rules of evidence those statements were inadmissible hearsay and that the rule of completeness, at the time, applied only to written and recorded statements. The statements at issue in that case were unrecorded statements made to law enforcement.

Respectfully, the reliance on *Ortega* is outdated. The Rules of Evidence have been amended since that time in two meaningful ways. The rule of completeness, Fed. R. Evid. 106, was amended on December 1, 2023. The Rule is now titled, Rule 106. Remainder of or Related Statements and it reads:

> If a party introduces all or part of a statement, an adverse party may require the introduction, at that time, of any other

7

>part—or any other statement—that in fairness ought to be considered at the same time. The adverse party may do so over a hearsay objection.

The first significant change is the inclusion of the last sentence. Thus, in deciding whether to allow Ms. Mitchell to introduce other portions of a statement already introduced by the Government, this Court's analysis should consider whether, in fairness, it should be considered at the same time. As amended, Rule 106 explicitly states that a hearsay objection is not a sufficient basis to prevent admission, so long as the proposed evidence otherwise qualifies.

The second significant change to Rule 106 extends it to cover all statements, including oral statements that have not been recorded. In short, both rationales provided for in *Ortega* to deny admission of the non-self-inculpatory statements made contemporaneously with other self-inculpatory statements have been overruled by the recent amendments to Rule 106.

The Advisory Committee Notes to the 2023 amendments clarify that it "does not give a green light of admissibility to all excised portions of statements. It does not change the basic rule, which applies only to the narrow circumstances in which a party has created a misimpression about the statement, and the adverse party proffers a statement that in fact corrects the misimpression." As it is unclear which statements of Ms. Mitchell the government may introduce, it is premature to analyze which other statements would be appropriate for Ms. Mitchell to introduce.

RESPECTFULLY SUBMITTED this 1st day of July, 2025.

/s/ Clark Mathews

# CERTIFICATE OF SERVICE
## L.R. 5.2(b)

I hereby certify that on July 1, 2025, a copy of the foregoing document was served on the following persons by the following means:

```
 1, 2   CM-ECF
_____ Hand Delivery
   3   Mail
_____ Overnight Delivery Service
_____ Fax
_____ E-Mail
```

1. CLERK, UNITED STATES DISTRICT COURT

2. PAULETTE L. STEWART
   JEFFREY K. STARNES
   VICTORIA K. NICKOL
   Assistant United States Attorneys
   United States Attorney's Office
       Counsel for the United States of America

3. KRISTIN LOUISE MITCHELL
       Defendant

/s/ Clark Mathews