CLARK MATHEWS
Assistant Federal Defender
Federal Defenders of Montana
Great Falls Office
104 2nd Street South, Suite 301
Great Falls, MT 59401
clark_mathews@fd.org
Phone: (406) 727-5328
Fax: (406) 727-4329
    Attorney for Defendant

### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF MONTANA
### GREAT FALLS MONTANA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>KRISTIN LOUISE MITCHELL,<br><br>Defendant. | Case No. CR 25-34-GF-BMM<br><br>**DEFENDANT'S MEMORANDUM IN SUPPORT OF MOTION FOR A NEW TRIAL** |

**Facts**

During jury selection on this case, the Court acknowledged this case has gotten some publicity. As one example, https://montanatalks.com/tren-de-aragua-illegal-alien-gang-arrests-tied-to-shelby-montana/. In that article, as in most of them reviewed by the undersigned, Ms. Mitchell's past convictions are mentioned. That the convictions were more than 20 years old is not typically mentioned.

1

The Court inquired whether "anyone hear about it in any way beforehand?" (Tr. P. 17). The Court had a discussion with prospective juror 6 because she raised her hand in response to that question. Prospective juror 6 stated, "I had read about it in the paper." The Court next asked, in front of the entire prospective jury pool:

> The Court: Okay. And what do you recall reading about it?
>
> Prospective Juror 6: I do think I remember that there was discussion that maybe something like this had happened previously.
>
> The Court: Okay. So that was according to the newspapers.
>
> Prospective Juror 6: According to the newspapers.

The Court subsequently advised, "You are going to decided based on what the witnesses who are swearing an oath testify here in court."

Ms. Mitchell, at the next sidebar, moved for a mistrial, "the jury pool has been contaminated now with the statement by Juror Number 6 that she's done something like this before." The Court responded:

> I am going to deny that for now. I'll keep that in mind. I'll defer ruling on it for now and keep that in mind as we move forward. I will do what I can to try to prevent those sort of statements. I wasn't prepared for her blurting that out. But I don't think at this point, as I explained to the jury, Ms. Mitchell is on trial for what happened in this occasion and whether the government's witnesses would persuade the jury beyond a reasonable doubt on the testimony presented here at trial.

(Tr. P.30).

2

The government sought to introduce evidence of Ms. Mitchell's prior conduct. The government also sought to introduce evidence of uncharged conduct from 2024. The Court, ultimately, did not allow them into evidence during the trial. One of the contested factual issues in the case was whether Ms. Mitchell had intended to violate immigration laws.

### I.   Law

If the jury has been exposed to extrinsic prejudicial evidence, a new trial should be granted if there is a reasonable possibility that it could have affected the verdict. *Vasquez*, 597 F.2d at 193. "When a jury is exposed to facts that have not been introduced into evidence a defendant has effectively lost the rights of confrontation, cross-examination, and the assistance of counsel." *Dickson v. Sullivan*, 849 F.2d 403, 406 (9th Cir. 1988). "[W]e have previously held a new trial was required where the jury was exposed to extraneous information highly prejudicial to the defendant even though it was unclear whether the jury actually considered or discussed the information." *Id.* at 406.

In *Vasquez,* the "law clerk-bailiff had inadvertently left the official file of the court in the jury room for four hours during the first day of deliberations." The file included, among other things, "inadmissible evidence that the appellant had been previously prosecuted for an offense involving contraband." *Vasquez*, 597 F.2d at 193. As most jurors either glanced or leafed through the file, "The possibilities are

too great that at least one juror realized that the appellant had been previously prosecuted…we can only conclude that there existed a reasonable possibility that the court file could have affected the verdict." *Id.* at 194.

In the present case, all of the jurors were exposed to prospective juror 6's statement about the newspaper's report of Ms. Mitchell's case that "something like this had happened previously." The possibilities are too great that at least one juror realized Ms. Mitchell had been previously prosecuted. The only reasonable conclusion is that the extraneous evidence could have affected the verdict as demonstrated by the government's motion to introduce evidence of this prior conduct in support of their theory of guilt.

In *Dickson*, the trial court "found that a deputy sheriff responsible for escorting the jurors to and from the courtroom had made a statement to two jurors to the effect that Dickson had "done something like this before."" *Dickson*, 849 F.2d at 405. "[I]t is clear that the deputy's comment was both directly related to a material issue in the case and highly inflammatory. There is a direct and rational connection between the statement that Dickson had "done something like this before" and the conclusion that Dickson had done "this" again." *Id.* at 407.

The statement by prospective juror 6 and the statement by the deputy sheriff in *Dickson* are strikingly similar. One difference being that all of the jurors in this case were exposed to the statement as opposed to only 2 of the jurors in *Dickson*.

There can also be little doubt that the statement is inflammatory and bears on a material issue in the case. Ms. Mitchell's intent to violate the law was a main point of contention throughout the trial. Indeed, the government repeatedly argued to the Court the prior bad acts were both relevant and prejudicial.

"Although we ordinarily assume that instructing the jury to disregard extraneous evidence sufficiently ensures that inadmissible evidence sufficiently ensures that inadmissible evidence will not influence the jury, where the extrajudicial statement concerns a defendant's prior criminal act, the efficacy of such instructions is subject to serious doubt." *Id.* at 408. (Citations removed). The *Dickson* Court highlighted the following passage from *United States v. Lewis*, 787 F.2d 1318, 1323 (9th Cir. 1986):

> To tell a jury to ignore the defendant's prior convictions in determining whether he or she committed the offense being tried is to ask human beings to act with a measure of dispassion and exactitude well beyond mortal capacities.

The *Dickson* Court found that statement especially true in cases where a defendant was deprived of the opportunity to rebut the evidence, to discuss its significance in argument to the jury, or to take other steps to lessen its prejudicial impact. *Id.*

The Supreme Court granted a new trial when jurors were exposed to newspaper articles containing information about the defendant's prior record. *Marshall v. U.S.*, 360 U.S. 310 (1959). In *Marshall*, the defendant was charged with

5

dispensing drugs without a prescription. *Id.* at 310. The defendant claimed entrapment as a defense. *Id.* at 311. The government asked to be allowed to admit evidence the defendant had previously practiced medicine without a license, tending to refute the defense of entrapment. The trial judge refused the evidence, finding it unfairly prejudicial. *Id.*

However, during the trial, newspaper accounts containing such information got before a number of jurors. *Id.* at 311-12. The trial judge inquired of the jurors one by one and the jurors averred they would not be influenced by the articles and could decide the case only on the evidence on the record. *Id.* at 312. The trial judge denied the motion for mistrial. *Id.* The Supreme Court reversed and ordered a new trial be granted, stating "We have here the exposure of jurors to information of a character which the trial judge ruled was so prejudicial it could not be directly offered as evidence. The prejudice is almost certain to be as great when the evidence reaches the jury through news accounts as when it is a part of the prosecution's evidence." *Id.* at 312-13.

A re-trial should be granted when a prospective juror makes prejudicial statements in front of the rest of the prospective jurors that could have a tremendous impact on the jury's verdict. *Mach v. Stewart*, 137 F.3d 630, 634 (9th Cir. 1997). In *Mach*, a prospective juror repeatedly stated that in her experience as a social worker, children never lied about sexual assault. *Id.* The Court stated

> [T]he jury's exposure during voir dire to an intrinsically prejudicial statement made four times by a children's social worker, occurred before the trial had begun, resulted in the swearing in of a tainted jury, and severely infected the process from the very beginning. To force a defendant to trial, over his objections, before such a jury, when an unbiased jury can be impanelled without any substantial loss to the court or to the prosecution, serves no legitimate interest.

*Id.*

The Ninth Circuit distinguished *Mach* from *Thompson v. Borg*, 74 F.3d 1571 (9th Cir. 1996) where "a venire member stated during voir dire that he had read in a newspaper the defendant had "pleaded guilty at one time and changed it."" *Id.* at 633, citing *Thompson,* 74 F.3d at 1573. The *Mach* Court noted, "The *Thompson* court observed that the remark was "vague and awkwardly phrased" and that it was elicited by defense counsel." *Id.* Indeed, the *Thompson* Court stressed the prospective juror only answered what he had read in the newspaper after being asked a third time, the second time by defense counsel. *Thompson*, 74 F.3d at 1573. The *Thompson* Court further stated, "We have found no cases of reversal because of "jury misconduct" or extraneous information, where the defense itself elicited the extraneous information in open court. If reversal on this ground were permitted, defense counsel could plant error in the record of any trial." *Id.* at 1574.

In determining whether there is a reasonable possibility that the extraneous information could have affected the verdict, the inquiry is an objective one. *United States v. Keating*, 147 F.3d 895, 901-02 (9th Cir. 1998). The Court "need not

7

ascertain whether the extrinsic[1] evidence actually influenced any specific juror." *Id.* at 902. The government has the burden of showing beyond a reasonable doubt that extrinsic evidence did not contribute to the verdict. *Id.*

The *Keating* Court identified factors to consider whether the government has met this burden:

>  1. Whether the material was actually received, and if so, how;
>  2. The length of time it was available to the jury;
>  3. The extent to which the juror discussed and considered it;
>  4. Whether the material was introduced before a verdict was reached, and if so at what point in the deliberations; and
>  5. Any other matters which may bear on the issue of the reasonable possibility of whether the extrinsic material affected the verdict.
>  6. Whether the prejudicial statement was ambiguously phrased;
>  7. Whether the extraneous information was otherwise admissible or merely cumulative of other evidence adduced at trial;
>  8. Whether a curative instruction was given or some other step taken to ameliorate the prejudice;
>  9. The trial context; and
>  10. Whether the statement was insufficiently prejudicial given the issues and evidence in the case.

*Keating*, 147 F.3d at 902-03, citing *Dickson*, 849 F.2d at 406 and *Jeffries v. Wood*, 114 F.3d 1484, 1491-92 (9th Cir. 1997) (en banc).

---

[1] The terms extraneous and extrinsic appear to be used interchangeably throughout the cases on this subject.

The first five factors derive from the *Dickson* decision and the second five factors derive from *Jeffries*. No one of these factors are dispositive. *Id.*

All of the prospective jurors received the information that "something like this had happened previously" from prospective Juror 6 during voir dire. Consequently, they had much of the trial and the entire deliberations to consider it. The first, second and fourth factors weigh in favor of a new trial. As for the third factor, it is unknown at this time. As for the fifth factor, the *Keating* Court emphasized that when the nature of the extrinsic evidence deals with prior bad acts, there is substantial risk it could factor into the verdict. *Id.* at 902.

As for the sixth factor (or first *Jeffries* factor), the government may attempt to argue the statement is ambiguous. And while the prospective juror used the words, "I think" and "maybe", the statement is not susceptible to two different meanings. The only sensible understanding of the statement is that the newspaper article alleged Ms. Mitchell had done something like this before. The seventh factor (or second *Jeffries* factor) weighs in favor of a new trial as the evidence of Ms. Mitchell's prior bad acts was ultimately ruled inadmissible by the Court.

Regarding the eight factor (or third *Jeffries* factor), a curative instruction was not given, nor was one requested. The ninth factor (or fourth *Jeffries* factor), the trial context, is that the information was supplied to the entire venire panel during voir dire by a juror after the Court asked her what she had read about the case in the

9

newspaper. Ms. Mitchell had no meaningful way to address the extrinsic evidence without further introducing evidence Ms. Mitchell had previous convictions on immigration-related offenses. This factor weighs in favor of a re-trial.

Finally, the tenth factor (or fifth *Jeffries* factor) weighs in favor of a re-trial. The government sought to introduce evidence of Ms. Mitchell's prior immigration-related convictions from more than 20 years ago, and it also sought to introduce uncharged conduct from 2024 related to a border crossing incident. The Court ultimately refused the admission of this evidence. But the entire jury learned during voir dire that a newspaper account of Ms. Mitchell's case reported "something like this had happened previously." So from the very beginning, Ms. Mitchell was brandished with the label of a repeat offender. This is important in a case where Ms. Mitchell's intent to violate the law was at dispute. This is precisely why the government argued the proposed 404(b) evidence should be admitted. The government argued it needed that evidence to prove intent. This factor weighs heavily in favor of granting a new trial.

RESPECTFULLY SUBMITTED this 24th day of July 2025.

/s/ Clark Mathews

## CERTIFICATE OF COMPLIANCE

I hereby certify that this Brief is in compliance with Local Rule 7.1(d)(2)(as amended). The brief's line spacing is double spaced, and is proportionately spaced, with a 14-point font size and contains less than 6,500 words. (Total number of words: 2,246 excluding tables and certificates).

DATED this 24th day of July 2025.

/s/ Clark Mathews

# CERTIFICATE OF SERVICE
## L.R. 5.2(b)

I hereby certify that on July 24, 2025, a copy of the foregoing document was served on the following persons by the following means:

```
 1, 2   CM-ECF
_____   Hand Delivery
   3    Mail
_____   Overnight Delivery Service
_____   Fax
_____   E-Mail
```

1. CLERK, UNITED STATES DISTRICT COURT

2. PAULETTE L. STEWART
   JEFFREY K. STARNES
   VICTORIA K. NICKOL
   Assistant United States Attorney
   United States Attorney's Office
       Counsel for the United States of America

3. KRISTIN LOUISE MITCHELL
       Defendant

/s/ Clark Mathews