**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
GREAT FALLS DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | **CR-25-34-GF-BMM** |
| vs. | |
| KRISTIN LOUISE MITCHELL, | **ORDER** |
| Defendant. | |

**INTRODUCTION**

Defendant Kristin Louise Mitchell moved for a new trial pursuant to Fed. R. Crim. P. 33. (Doc. 121.) Mitchell argues that the jury was exposed to extrinsic evidence that could have affected the verdict. (*Id.*) The Government opposes the motion. (Doc. 126.) The Court conducted a hearing on the motion on September 22, 2025.

**BACKGROUND**

A jury convicted Mitchell of Attempted Harboring of Illegal Aliens on July 9, 2024. (Doc. 111.) The Court spoke with potential juror number six ("Prospective Juror 6") during jury selection. Prospective Juror 6 indicated she may have heard about Mitchell's case before. The Court had the following conversation with Prospective Juror Number 6:

1

**The Court:** Do you know something about the case?

**Prospective Juror 6:** I had read about it in the paper.

**The Court:** Okay. And what do you recall reading about it?

**Prospective Juror 6:** I do think I remember that there was discussion that maybe something like this had happened previously.

**The Court:** Okay. So that was according to the newspapers.

**Prospective Juror 6:** According to the newspapers.

**The Court:** Okay. Did you read it carefully? Read it once? Tell me how much you read about it.

**Prospective Juror 6:** I think I skimmed it over once, probably.

**The Court:** All right. Is your reading of the it going to affect your ability to be fair and impartial here? Because you have to decide this case, not about what you read in the newspaper. Now, I don't want you going to the jury room, "Well, gosh, I read in the newspaper X happened." You are going to decide based on what the witnesses who are swearing an oath testify here in court. Could you decide based on that fact?

**Prospective Juror 6:** Based on that, I could.

(Doc. 126 at 4).

Mitchell takes issue with Prospective Juror 6's statement: "I do think I remember that there was discussion that maybe something like this had happened

previously." Mitchell moved for a mistrial during the voir dire process claiming

that the jury pool had been contaminated with information of Mitchell's previous

convictions. (Doc. 122 at 2.) The Court denied the motion and deferred ruling. (*Id*.)

The Court excluded testimony at trial regarding Mitchell's previous convictions for

immigration-related offenses from 2003 and 2005 and testimony related to an

incident involving Mitchell at the Canadian border in March 2024.

### STANDARD OF REVIEW

Federal Rule of Criminal Procedure 33 allows a court to grant a new trial "if

the interest of justice so requires." A decision to grant a motion for a new trial rests

within the sound discretion of the court. *United States v. Powell*, 932 F.2d 1337,

1340 (9th Cir. 1991). A motion for a new trial "should be granted only in

exceptional cases in which the evidence preponderates heavily against the verdict."

*United States v. Rush*, 749 F.2d 1369, 1371 (9th Cir. 1984).

A new trial may be granted when a jury is exposed to extrinsic prejudicial

evidence if a reasonable possibility exists that the extrinsic evidence could have

affected the verdict. *United States v. Vasquez*, 597 F.2d 192, 193 (9th Cir. 1979).

"[A] new trial [is] required where the jury was exposed to extraneous information

highly prejudicial to the defendant even though it was unclear whether the jury

actually considered or discussed the information." *Id.* at 406. A court conducts an

objective inquiry in determining whether a reasonable possibility exists that the

extraneous information could have affected the verdict. *United States v. Keating*, 147 F.3d 895, 901-02 (9th Cir. 1998). The government has the burden of showing beyond a reasonable doubt that the extrinsic evidence did not contribute to the verdict. *United States v. Navarro-Garcia*, 926 F.2d 818, 821 (9th Cir. 1991).

## DISCUSSION

Mitchell argues that the jurors receiving the information "I do think I remember that there was discussion that maybe something like this had happened previously" during voir dire affected the verdict. The Court disagrees. The information received by the jury was not sufficiently prejudicial to warrant a new trial.

The government bears the burden of showing beyond a reasonable doubt that the extrinsic evidence did not contribute to the verdict. *Keating*, 147 F.3d at 902-03. The Court may consider various factors to determine if the government has met its burden including the following: (1) whether the material was actually received; (2) the length of time the information was available to the jury; (3) the extent to which the juror discussed and considered the extrinsic evidence; (4) whether the material was introduced before the verdict was reached, and if so, when; (5) any other matters which bear of the issue of the reasonable possibility of whether the material affected the verdict; (6) whether the statement was ambiguously phrased; (7) whether the information was otherwise admissible or merely cumulative; (8)

whether a curative instruction was given or the court took some other step to ameliorate the prejudice; (9) the trial context; and (10) whether the statement was insufficiently prejudicial given the issues and evidence. *Keating*, 147 F.3d at 902-03, citing *Dickson*, 849 F.2d at 406 and *Jeffries v. Wood*, 114 F. 3d 1484, 1491-92 (9th Cir. 1997 (en banc) (the first five factors are derived from *Dickson* and the second five factors are derived from *Jeffries*.) Factor number 9 from *Jefferies*, the trial context, represents a consideration of the combined *Dickson* factors. *Id.* No one factor proves dispositive. *Id*. The *Keating* factors weigh against granting a new trial.

### a. The material received by the jury

Factor one weighs against granting a new trial. The jury received only the single statement by Prospective Juror 6. The statement made by Prospective Juror did not clearly suggest that Mitchell had a previous conviction related to the attempted harboring of non-citizens. The information received by the jury did not suggest the inference that "because [s]he did it before, [s]he must have done it again." *United State v, Bagley*, 772 F. 2d 482, 488 (9th Cir. 1986), *cert denied*, 475 U.S. 1023 (1986). The jury was not exposed to the newspaper article that Prospective Juror 6 mentioned or any additional information beyond Prospective Juror 6's statement. Unlike *United State v. Vasquez*, where the jury was exposed to the material of a court's official files that included motions, proposed instructions,

stipulations, and an affidavit, the jury here did not receive materials related to

Prospective Juror 6's statement. 597 F. 2d 192, 193 (9th Cir. 1979).

The facts resemble *Thompson v. Berg*, where the Ninth Circuit determined

that a vague remark that had been awkwardly phrased did not require a new trial.

74 F.3d 1571 (9th Cir. 1996). In *Thompson*, "a venire member stated during voir

dire that he had read in a newspaper the defendant had "pleaded guilty at one time

and changed it.'" *Id.*, 74 F.3d at 1573. Similarly, here, Prospective Juror 6 stated

they had read a newspaper article and replied, "I do think I remember that there

was discussion that maybe something like this had happened previously."

Prospective Juror 6's vague statement lacked any detail about what may have

happened previously or who may have been involved. This vague and ambiguous

remark by Prospective Juror 6 did not directly implicate Mitchell for any prior

convictions or acts she had done before. The jury received only this vaguely

worded statement.

b.  **The length of time the material was available to the jury**

Factor two weighs against granting a new trial. The jury received limited

exposure to Prospective Juror 6's statement. The statement arose during the quick

exchange between the Court and Prospective Juror 6. The jury was exposed to

Prospective Juror 6's statement at the start of trial. This early exposure means that

the jury had the entirety of the trial and jury deliberations to consider what

6

Prospective Juror 6 said. The Court reiterated on numerous occasions the importance of deciding the case only on the facts presented at trial. The Court reminded jurors that they were not allowed to decide the case based on facts jurors previously may have heard or read about.

These circumstances differ from *Mach v. Stewart*, a case about sexual assault claims. 137 F.3d 630 (9th Cir. 1997). A prospective juror in *Mach* made four repeated and clear statements that because she was an experienced social worker, she knew children never lied about sexual assault. *Id*. The court found that these statements were prejudicial and sufficiently tainted the jury pool before trial to warrant a new trial. *Id*. Unlike *Mach*, Prospective Juror 6 made the statement only once. Prospective Juror 6 did not specifically state information related to Mitchell's charged crimes. The potential jurors were only exposed to the statement for a limited time and the information was not repeated.

c. **Evidence the jurors discussed or considered the material**

Factor three weighs against granting a new trial. Mitchell has not shown that any of the final paneled jurors discussed Prospective Juror 6's statement during deliberations. The Court provided warnings to the potential jurors about deciding the case based on evidence at trial, rather than what was read or known beforehand. (Doc. 126 at 12.) It is unreasonable that the final jury panel would

7

have considered or discussed the vague statement made by Prospective Juror 6 and disregarded the Court's instruction.

Prospective Juror 6 did not make the final jury panel. This omission further suggests it would be unreasonable to assume the jurors revisited and considered Prospective Juror 6's statement in deciding to convict Mitchell. The Court is tasked to conduct voir dire to find jurors who may assert bias against the defendant. Questions regarding the jurors' previous knowledge of a case proves extremely relevant for the Court to investigate. The short interaction between the Court and Prospective Juror 6 unlikely influenced the final jury panel in reaching its verdict.

### d.  The material being introduced before jury deliberations

Factor four weighs in favor of granting a new trial. Prospective Juror 6's statement was made at the very beginning of the proceedings during the voir dire process. The statement preceded jury deliberations and occurred days before the jury deliberated to reach a verdict. The final jurors had the ability to consider the statement during the entirety of deliberations.

### e.  The statement's ambiguous nature and phrasing

Factor five weighs against granting a new trial. Prospective Juror 6's statement did not unambiguously state Mitchell had done this before or had been convicted of harboring non-citizens before. Prospective Juror 6's statement stated, "I do think I remember that there was discussion that maybe something like this

had happened previously." Unlike *Dickson*, when the bailiff indicated to the impaneled jury members that the defendant "had done something like this before," here, the statement was made by a prospective juror and not specifically targeted at Mitchell's prior actions. 849 F. 2d at 405.

Prospective Juror 6's statement, as phrased, mentioned reading that they thought maybe something or a discussion of something occurred previously. Prospective Juror 6's statement did not identify to what "something like this" referred. The statement did not mention that Mitchell had done something before. Prospective Juror 6 indicated "maybe" something happened previously, but Prospective Juror 6 did not indicate Mitchell had been convicted of immigration-related offenses previously. The statement by Prospective Juror 6 reasonably could be found to indicate she read something similar had previously happened in Shelby or Montana. The statement by Prospective Juror 6 reasonably could be found to indicate someone other than Micthell had previously done something like this before.

The Court's interaction with another prospective juror after the exchange with Prospective Juror 6 brings light to this ambiguity. Prospective Juror 5 indicated they maybe knew something about this case and Mitchell relating to an incident they heard about in March. (Doc. 127 at 25.) The incident referred to by Prospective Juror 5 related to drug proceedings in Billings that had some

connection to Shelby. (*Id.*) The incident referred to by Prospective Juror 5 was not at all related to Mitchell. (*Id.*) Prospective Juror 5's exchange with the Court helps establish how other reasonable interpretations exist as to what Prospective Juror 6's statement referred to. There are many reasonable interpretations of what Prospective Juror 6 was referencing that do not involve Mitchell or her previous convictions. Prospective Juror 6's statement was ambiguous as to what was being referenced about Micthell. Prospective Juror 6's statement also was ambiguously phrased.

At the time that Prospective Juror 6's statement was made, the jury lacked any factual background on what exactly could have occurred previously to alleviate the ambiguous nature of the statement. Prospective Juror 6's statement relating to something like this occurring previously was ambiguously phrased and subject to multiple reasonable interpretations. Prospective Juror 6's statement did not clearly implicate Mitchell for her prior convictions to rise to the level of inflammation of warranting a new trial.

## f. The statement's admissibility

Factor six weighs in favor of granting a new trial. Mitchell's previous convictions were excluded at trial. (Doc. 122 at 9.) The Court's exclusion of information regarding what Mitchell had previously done relating to non-citizens and immigration-related offenses was prejudicial and material. Prospective Juror

6's statement indicating something happening previously would likely fall under information relating to Mitchell's previous convictions.

### g. The Court's curative instruction to ameliorate the prejudice

Factor seven weighs against granting a new trial. The Court properly mitigated any potential prejudice from Prospective Juror 6's statement through continued questioning and instructions. The Court instructed jurors to decide the case on the evidence presented at trial, not information contained in newspapers. In *Thompson*, the trial court similarly warned jurors to decide the case based on evidence, not rely on newspapers. 74 F.3d at 1575-76. The U.S. Supreme Court found the trial court's instruction "adequately told those jurors who understood from the veniremen that a newspaper reported Thompson had pleaded to something to disregard it and decide the case on the evidence." *Id.* at 1576.

None of the prospective jurors who mentioned having some information previously on the case (Prospective Jurors 3, 5, 6, and 29) made it on the final jury panel. (Doc. 126 at 7.) The Court finds that the issuance of repeated instructions and the fact that Prospective Juror 6 was not impaneled ameliorates any prejudice from the statement. The Court provided curative instructions to the jury members to decide the case solely on the information and evidence presented at trial.

### h.    The statement's prejudice

Factor eight weighs against granting a new trial. Mitchell relies on *Dickson* to argue that the statement made by Prospective Juror 6 was material to the issues in the case and highly inflammatory. In *Dickson*, the trial court "found that a deputy sheriff responsible for escorting the jurors to and from the courtroom had made a statement to two jurors to the effect that Dickson had 'done something like this before.'" *Dickson*, 849 F.2d at 405. "[I]t is clear that the deputy's comment was both directly related to a material issue in the case and highly inflammatory. A direct and rational connection existed between the statement that Dickson had "done something like this before" and the conclusion that Dickson had done "this" again." *Id.* at 407.

*Dickson* differs from the facts of Mitchell's case in several keyways. The statement made by Prospective Juror 6 did not directly indicate that Mitchell herself had done something like this before. Prospective Juror 6 instead stated that "maybe something like this had happened before." Prospective Juror 6's statement was not made by a court official like in *Dickson*. Prospective Juror 6's statement was made to potential jury members who did not have the factual background of trial to determine what "this" was. No direct relation exists between Prospective Juror 6's statement and the conclusion that Mitchell had done this same conduct before or had been convicted previously for immigration related offenses. *Dickson*, 849 F.2d at 407. In fact, pretrial juror exposure to a defendant's previous

12

conviction does not create an irrebuttable presumption of prejudice. *Patton v.*

*Yount*, 467 U.S. 1025, 1035 (1984). Any potential prejudice that may have resulted

from Prospective Juror 6's statement was cured when all prospective jurors having

any previous knowledge about this case were not placed onto the final jury panel.

The Court further alleviated any prejudice from Prospective Juror 6's statement

with the curative instructions to decide the case based only on the facts presented

at trial.

i. **Any other matters that bear of the issue of the reasonable possibility of whether the material affected the verdict**

The Court does not find there are other matters that bear on the reasonable

possibility that Prospective Juror 6's statement contributed to the jury's verdict of

guilty on the charge of Attempted Harboring of Illegal Aliens.

## CONCLUSION

An analysis of the *Keating* factors weighs against granting Mitchell a new

trial under Federal Rule of Criminal Procedure 33. Prospective Juror 6's statement

was not sufficiently prejudicial to be reasonably likely to have affected the jury

verdict. The Court exercises its discretion to deny Mitchell's motion for a new

trial.

## ORDER

Accordingly, **IT IS ORDERED** that Mitchell's Motion for New Trial (Doc.

121) is **DENIED**.

Dated this 29th day of September 2025.


Brian Morris, Chief District Judge
United States District Court

14